Robert I. GREENBERG,
Plaintiff–Appellee,

v.

Laurance B. WOLFBERG and Carolyn
Wolfberg, Defendants–Appellants.

No. 81416.

Supreme Court of Oklahoma.

Dec. 20, 1994.

As Corrected Jan. 3, 1995.

Harry F. Tepker, Jr., Norman and Aton Arbisser, Robert Barnes, Kaye, Scholer, Fierman, Hays & Handler, Los Angeles, CA, for appellants.

John T. Edwards, Shannon L. Edwards, Robert A. French, Monnet, Hayes, Bullis, Thompson & Edwards, Oklahoma City, for appellee.

OPALA, Justice.

The United States Court of Appeals for the Tenth Circuit [certifying court] certified the following questions pursuant to the Uniform Certification of Questions of Law Act, 20 O.S.1991 §§ 1601 et seq.:

1. In light of the facts as detailed below that the Defendants Laurance B. Wolfberg and Carolyn Wolfberg either individually or combined instituted four separate lawsuits and filed one counterclaim against the Plaintiff Robert I. Greenberg or against a party with which Mr. Greenberg was in privity, may the four separate suits and the counterclaim be considered as a single suit (the "Process") for purposes of alleging malicious prosecution and abuse of process claims regardless of the varied disposition and success of the various separate actions?

2. Closely related to question 1 is whether the statute of limitations applicable to both the malicious prosecution and abuse of process claims should be applied to each individual action or to the process?

3. With respect to the abuse of process claim, does the statute of limitations begin to run with the commencement or the termination of each individual action or of the Process?

4. What is the duration of the statute of limitations on an abuse of process claim?

We answer the certified questions as follows: (1) The availability of a multi-componential predicate for the torts of malicious prosecution and abuse of process [1] is determined by analyzing the proceedings in each *component* case. While *malicious prosecution* may be predicated upon *multiple litigation*, a malicious-prosecution plaintiff may not recover *actual damages* for proceedings that terminated *dehors* the applicable statutory limitation. (2) The time bar for both delicts pressed in federal court must be applied on a case-by-case basis. Nonetheless, those components of the "Process" [2] barred by limitation may be *relevant* in proving a case to recover for successive proceedings. The relevancy goes to the elements of probable cause, malice or punitive damages. (3) Viewing the third question as asking of us when the statute of limitation for an abuse-of-process claim commences, we answer that the limitation period begins when the abuse-of-process claim *accrues*—i.e., when a plaintiff could have "*first* maintained the cause to a successful result." [3] (4) The statutory limitation for an abuse-of-process claim is two years.

I

## THE ANATOMY OF FEDERAL LITIGATION [4]

Robert I. Greenberg [Greenberg or malicious-prosecution plaintiff] and Carolyn Wolfberg [malicious-prosecution defendant] are the children of Mal and Rose Greenberg. They are both potential beneficiaries of the

1. Malicious prosecution and abuse of process are *common law actions* uninvaded and unmodified by this State's statutory regulations.

2. *See* Part II, *infra*, for identification and explanation of the components of the "Process", as that term is used in the certified questions.

3. *Neff v. Willmott, Roberts & Looney,* 170 Okl. 460, 41 P.2d 86, 87 (1935).

4. The material accompanying the certified questions consists of the parties' briefs to the U.S. Court of Appeals for the Tenth Circuit. The factual recitals in the anatomy of federal litigation and in the discussion of the components of the Process were gleaned from this material and from the briefs submitted to this court.

Mal Greenberg Residual Trust. Greenberg is one of the trustees of that trust. While at his mother's death Greenberg is to receive his share of the residual trust outright, Carolyn is to have only the interest accruing on the trust's principal that remains after distribution to Robert.

In the 1970's Laurance B. Wolfberg [Wolfberg or malicious-prosecution defendant], Carolyn's husband, and Greenberg acquired interests in several business partnerships including, among others, Service Business Forms, Griffith Resources and Green Wolf Oil Company. In 1982 Greenberg and Wolfberg decided to sever their business ties. After effectuating this decision the parties engaged in a series of five forensic battles commencing in November 1986. Upon the culmination of these actions Greenberg brought suit on August 14, 1990 against the Wolfbergs for malicious prosecution and abuse of process. Judgment in Greenberg's favor was entered on October 8, 1991; the Wolfbergs appealed to the U.S. Court of Appeals for the Tenth Circuit, the certifying court.

## II

## THE COMPONENTS OF THE "PROCESS" IN THE SENSE DEFINED BY THE CERTIFYING COURT

In its proffered questions the certifying court defines the four predicate suits and one counterclaim between the litigating parties as the "Process". The components of the Process are as follows:

COMPONENT A:

Laurance B. Wolfberg v. Robert I. Greenberg, Cause No. CIV–86–2441–P, in the U.S. District Court for the Western District of Oklahoma, filed on November 3, 1986. In this action Wolfberg sought (a) an accounting for the profits and losses of Green Wolf Oil Company, a partnership, and (b) that partnership's dissolution. He also sought recovery for Greenberg's breach of fiduciary duties owed to this partnership. While Wolfberg prevailed in pressing for an accounting

and dissolution of the partnership, he lost to Greenberg on the breach-of-duty theory. After appellate review by the certifying court, the U.S. Supreme Court denied certiorari on November 13, 1989.

COMPONENT B:

Service Business Forms Industries, Inc., Service Computer Forms Industries, Inc., Laurance B. Wolfberg and Carolyn Wolfberg v. Robert I. Greenberg, individually and as co-trustee under the Mal Greenberg Testamentary Trusts et al., Cause No. CJ–86–12606, in the District Court of Oklahoma County, filed November 26, 1986. The plaintiffs asserted four causes of action against Greenberg, individually and as trustee of the Mal Greenberg Testamentary Trusts. The claims dealt primarily with an asserted failure of consideration to support the stock redemption plan for the Mal Greenberg Testamentary Trusts' stock in Service Business Forms. By March 18, 1988 all causes stood dismissed *without prejudice.*

COMPONENT C:

Carolyn Wolfberg v. Robert I. Greenberg, individually and as co-trustee under the Mal Greenberg Testamentary Trusts et al., Cause No. CJ–86–12734, in the District Court of Oklahoma County, filed on December 3, 1986. Carolyn Wolfberg sought recovery for (1) Greenberg's breach of fiduciary duties owed to her by him as a trustee of the Mal Greenberg Residual Trust and (2) Greenberg's intentional infliction of emotional distress. The suit was dismissed *without prejudice* on September 17, 1987.[5]

COMPONENT D:

Carolyn Greenberg Wolfberg v. Robert I. Greenberg as co-trustee under the Mal Greenberg Testamentary Trust et al., Cause No. 88–C–3346, in the District Court, Sedgwick County, Kansas, filed on September 16, 1988. Carolyn Wolfberg sought the removal of the Mal Greenberg Testamentary Trust trustees because of their "prolonged and continued hostility and animosity" towards her. Judgment was entered for the defendants on January 25, 1990.

---

5. For an explanation of the legal effect of a dismissed lawsuit (without prejudice) as a malicious-prosecution predicate, see *infra* note 40.

**COMPONENT E:**

Robert I. Greenberg as co-trustee of the Mal Greenberg Testamentary Trusts et al. v. Service Business Forms Industries, Inc. and Service Computer Forms Industries, Inc., Cause No. CIV–87–2769–A, in the U.S. District Court for the Western District of Oklahoma, filed on March 16, 1987. The trustees sought judgment on the defendants' note given as consideration in a stock redemption plan. The defendants counter-claimed against Greenberg, alleging he had relinquished his right to any monies due the trust under the note's terms. Partial summary judgment, entered on March 14, 1988, and then final judgment of March 25, 1988 went to the plaintiffs. The latter parties prevailed on all issues. The appellate process came to an end when the U.S. Supreme Court denied certiorari on January 16, 1990.

### III

### THE NATURE OF THIS COURT'S FUNCTION WHEN ANSWERING CERTIFIED QUESTIONS FROM A FEDERAL COURT

While we can set the parameters for the permissible use of (multiple) successive proceedings as a predicate for malicious prosecution, this court's assessment of the evidence adduced at the trial of this cause is beyond the allowable bounds of its responsibility. It is not this court's province to intrude (by responses to the certified questions) upon the federal court's decision-making process. Because *the case* is not before us for decision, we refrain from applying the

given state-law responses to the facts elicited in the federal-court litigation or from passing upon the effect of federal procedure on the record and the issues in the case.[6] We hence must defer to the certifying court the task of analyzing the impact of our answers on the components defined as the Process.

### IV

### EXCEPT AS ALTERED BY OKLAHOMA'S CONSTITUTION AND HER STATUTES, THE COMMON LAW REMAINS IN FULL FORCE.

■ To the extent that statutory provisions and this court's jurisprudence construing them do not yield complete answers to the questions posed, we have reached for this State's declared common law to supplement the responses sought. By the mandate of 12 O.S.1991 § 2[7] *the common law remains in full force unless a constitutional clause or a statute explicitly provides to the contrary.* The common law's legislative abrogation may not be effected by mere *implication;*[8] it must be clearly and plainly expressed.[9] A presumption favors the preservation of common-law rights.[10] In this State's legal tradition the common law forms "a dynamic and growing" body of rules that changes with the conditions of society.[11]

### V

### MALICIOUS PROSECUTION

■ A majority of American courts concur in the notion that if the elements which comprise malicious prosecution are met and material damages are demonstrable, a plaintiff

---

6. *Bonner v. Oklahoma Rock Corp.,* Okl., 863 P.2d 1176, 1178 n. 3 (1993); *Shebester v. Triple Crown Insurers,* Okl., 826 P.2d 603, 606 n. 4 (1992).

7. The relevant terms of 12 O.S.1991 § 2 provide:

 "The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma...."

8. *Tate v. Browning–Ferris, Inc.,* Okl., 833 P.2d 1218, 1225–26 (1992); *Silver v. Slusher,* Okl., 770 P.2d 878, 884 (1989); *Ricks Exploration v. Okl. Water Resources Bd.,* Okl., 695 P.2d 498, 504 (1985); *Roxana Petroleum Co. v. Cope,* 132 Okl. 152, 269 P. 1084, 1085 (1928) (the court's sylla-

bus ¶ 3); *Reaves v. Reaves,* 15 Okl. 240, 82 P. 490, 495 (1905); *State Mut. Life Assur. Co. of Amer. v. Hampton,* Okl., 696 P.2d 1027, 1034, 1036 (1985) (Opala, J., concurring).

9. *Fuller v. Odom,* Okl., 741 P.2d 449, 451 (1987); *McCormack v. Oklahoma Pub. Co.,* Okl., 613 P.2d 737, 740 (1980); *Reaves, supra* note 8, 82 P. at 495; *Hampton, supra* note 8 at 1036 (Opala, J., concurring).

10. *Reaves, supra* note 8, 82 P. at 495; *Hampton, supra* note 8, 82 P. at 1036 (Opala, J., concurring).

11. *Brigance v. Velvet Dove Restaurant, Inc.,* Okl., 725 P.2d 300, 303 (1986), quoting *McCormack, supra* note 9 at 740. *See also Vanderpool v. State,* Okl., 672 P.2d 1153, 1157 (1983).

may prevail upon this cause of action *without having to prove special injury or grievance.*[12] Our jurisprudence clearly accords with this view. We do not recognize *interference with the person*[13] *or property*[14] of another as a required element for pressing this delict. The special-injury requirement stands supplanted by the malicious-prosecution plaintiff's heavy burden of proof. This onus serves to shield legitimate resort to the courts from subjection to vexatious litigation[15] and is consistent with our announced policy that disfavors this tort rubric.[16]

## A

### The Elements of the Tort

■ We initially delineate the elements of *malicious prosecution drawn from proof supplied by multiple civil proceedings.* Identification of the constituent elements is *central* to consideration of the first certified question. It is only when the requirements for maintaining this tort are met that a malicious-prosecution claim arises and the run-

ning of limitation is triggered. While our jurisprudence has not previously addressed the question whether a malicious-prosecution claim can be based upon repetitive civil proceedings, the national body of the common law affords ample sources to guide our task.[17] It recognizes the delict of malicious prosecution based upon *a multi-componential predicate*, where a party (1) has brought successive suits against the same person upon *the same cause of action* after an adverse decision which should have ended the controversy *or* (2) has filed separate actions upon the *same claim.*[18] We recognize today RESTATEMENT (SECOND) OF TORTS § 679[19] as the correct exposition of this State's common law.[20]

■ For the use of a multi-componential predicate in malicious prosecution *the same cause of action* must have been asserted in each component. The plaintiff must prove the malicious-prosecution defendant (1) initiated the proceedings[21] embraced within the multi-componential predicate and these proceedings were (2) brought *without* probable cause, (3) motivated by malice, (4) terminated

12. *See* W.L. PROSSER AND W.P. KEETON, THE LAW OF TORTS § 120, at 890–91 (5th ed. 1984).

13. Examples of proceedings interfering with the person include, among others, lunacy, contempt, bastardy, juvenile delinquency and arrest under civil process. *See* PROSSER AND KEETON, *supra* note 12 at 890.

14. Examples of proceedings interfering with a person's property include, among others, garnishment, replevin, attachment, the search of premises under a warrant, injunctions, proceedings in bankruptcy and for dissolution of a partnership. *See* PROSSER AND KEETON, *supra* note 12 at 890–91.

15. *See* PROSSER AND KEETON, *supra* note 12 at 890.

16. *Glasgow v. Fox*, Okl., 757 P.2d 836, 839 (1988); *Young v. First State Bank, Watonga*, Okl., 628 P.2d 707, 709 (1981); *Williams v. Frey*, 182 Okl. 556, 78 P.2d 1052, 1056 (1938).

17. *See* RESTATEMENT (SECOND) OF TORTS § 679 (1977) which states in pertinent part:
"One who repeatedly initiates civil proceedings against another for the same cause of action is subject to liability for the harm caused thereby, if
(a) the proceedings are initiated without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim on which the proceedings are based, and

(b) except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought."

18. *See* RESTATEMENT (SECOND) OF TORTS § 679 comment b (1977). It makes § 679 applicable not only (a) when the original plaintiff is relitigating a claim which has been decided adversely to that plaintiff but also (b) when a number of separate proceedings for the same cause of action are initiated by a legal entity.

19. For the text of RESTATEMENT (SECOND) OF TORTS § 679, see *supra* note 17.

20. Restatements of the common law on chosen subjects, which are produced by the American Law Institute, a private national organization of judges, practitioners, and law teachers, are scholarly *"codifications of American common law in various substantive law areas, based upon the decisions of the courts of last resort of the states."* (Emphasis added.) Winters, The Contribution of Professional Organizations to Stability and Change Through Law 265, 269 (1963). For a history of the Institute, see Goodrich, The Story of the American Law Institute, 1951, Wash. U.L.Q. 283; *see also* Krause, Gans, 1 The American Law of Torts § 1:18 at 61 (1983); PROSSER AND KEETON, *supra* note 12, § 3 at 17.

21. *"Proceeding"* here includes *"counterclaim"*. *See* RESTATEMENT (SECOND) OF TORTS § 674, comment a, which states:

in the plaintiff's favor and (5) damaging to the plaintiff.[22]

■■■ While *earlier* components of the predicate may serve as an element's proof in a *later* proceeding, *each individual suit* must satisfy the critical elements of (a) initiation by the malicious-prosecution defendant, (b) termination favorable to the malicious-prosecution plaintiff and (c) lack of probable cause.[23] There is an exception to the lack-of-probable-cause requirement where an earlier action, although brought with probable cause, is decided adversely to the malicious-prosecution defendant.[24] There, if successive suits are brought on the same cause of action, the plaintiff may use the *earlier*, adversely-decided action to prove one or more of the § 679 tort's elements. Nonetheless, *no actual damages* may be recovered for the earlier action if it was brought *upon* probable cause.[25]

## B

### Initiation of the Action by the Malicious–Prosecution Defendants

■■■ In the five components of the Process there are four separately identified

"Since the term 'civil proceedings' includes a counterclaim, one who files a counterclaim to a cause of action initiates a civil proceeding." *See also* 12 O.S.1991 § 2013 for Oklahoma's statutory treatment of counterclaims.

**22.** *Reeves v. Agee*, Okl., 769 P.2d 745, 752 (1989); *Young v. First State Bank, Watonga*, Okl., 628 P.2d 707, 709 (1981); *Page v. Rose*, Okl., 546 P.2d 617, 620 (1976); *Browning v. Ray*, Okl., 440 P.2d 721, 724 (1968); *Towne v. Martin*, 196 Okl. 510, 166 P.2d 98, 100 (1945); *Sawyer v. Shick*, 30 Okl. 353, 120 P. 581, 582 (1911).

**23.** The court in *Sawyer, supra* note 22, 120 P. at 582, drew a critical distinction between malice and want of probable cause when it observed: "Malice may be inferred from a total want of probable cause, but, *e converso*, a total want of probable cause cannot be inferred from malice." *See also Browning, supra* note 22 at 725, where it was held that if the evidence establishes that an action was instigated *without* probable cause, malice may be implied or inferred.

**24.** For a discussion of the basis for the exception, see Subpart V(C), *infra*.

**25.** Our jurisprudence recognizes that probable cause is a complete defense to a malicious-prosecution claim. *See Page, supra* note 22 at 620.

plaintiffs—Laurance B. Wolfberg, Carolyn Wolfberg, Service Business Forms Industries, Inc. and Service Computer Forms Industries, Inc. To combine these components into a "single suit" requires an inquiry into the relationship of the various plaintiffs, each to the other. Where there is (1) a common claim asserted in the components of the Process[26] and (2) privity of interest or estate between the parties who initiated the suits,[27] the actions can be combined to assert a malicious-prosecution claim. Disparity among the identities in which a malicious-prosecution plaintiff is sued can also be resolved by the same analysis. If there is a privity of interest or estate among the different legal entities by which the malicious-prosecution plaintiff was haled into court, that plaintiff may combine the proceedings as a predicate to allege the delict if the component suits are based upon a common cause of action.

## C

### Lack of Probable Cause

■■■ Greenberg has the affirmative duty of proving[28] that the malicious-prosecution defendants brought the component ac-

To allow recovery for a suit brought upon probable cause would undermine this rule of law.

**26.** *See Shedd v. Patterson*, 302 Ill. 355, 134 N.E. 705, 707 (1922); *Soffos v. Eaton*, 152 F.2d 682, 683 (D.C.Cir.1945); *Ripley, infra* note 31, 198 S.W.2d at 864 (the plaintiff alleged that where a defendant initiated a series of suits for the *same cause of action*, it amounted to harassment; and he prevailed upon the delict of malicious prosecution); *Trueman Fertilizer Company v. Stein*, 84 So.2d 570, 572 (Fla.1956) (malicious prosecution lies where, after a previous adverse decision, the malicious-prosecution defendant brings successive suits against the same person upon the same cause of action).

**27.** *See Cartwright v. Atlas Chemical Industries, Inc.*, Okl., 623 P.2d 606, 611 (1981), where the court held that (a) "nominal parties to an action" include those who "have control of the prosecution or defense in furtherance of their own interest and who enjoy, because of factual circumstances, all the rights of an actual party," and (b) that a person meeting these criteria is a *"privy in interest"*. *Id.* at 611. *See also Soffos, supra* note 26 at 682; *Ripley, infra* note 31, 198 S.W.2d at 864.

**28.** Here the burden of proof is by *a preponderance of the evidence. Young, supra* note 16 at 712.

tions *without probable cause.*[29] In pressing malicious prosecution based upon multiple civil proceedings, one could encounter an *earlier* component of the Process which may have been filed *with* probable cause.[30] Nevertheless, if the earlier action had been determined adversely to the malicious-prosecution defendant, subsequent suits asserting the same cause of action presumably will have been instigated *without* probable cause. For *evidentiary* purposes the relevancy of the earlier adversely-determined cause is not denigrated by its status as a time-barred component in the action.[31] Nonetheless, there may be *no* recovery of *actual* damages suffered from suits *dehors* the applicable statutory limitation.[32]

## D

### Malicious Motivation

▮▮▮▮ The essence of malicious prosecution is abuse of judicial process occasioned by *bringing* a civil proceeding *with* malice.[33] When a malicious-prosecution defendant (1) instigates successive suits upon a cause of action after an adverse determination, (2) files repetitive suits for the *same* cause of action before any are resolved or (3) initiates, dismisses and refiles the same cause of action, the bringing of the successive actions [even those concluded *dehors* the applicable statutory limitation] may be used as proof of an improper motive or of malice.[34] Nonetheless, where the earlier action *has not been adversely concluded,* successive proceedings upon the *same cause of action* are *not* relevant to *a lack of probable cause.*[35] The malicious-prosecution plaintiff carries the burden of proving the defendant's want of probable cause in bringing *each action comprising the multi-componential predicate.*

## E

### Termination in Favor of the Malicious–Prosecution Plaintiff

▮▮▮▮ The fourth element of malicious prosecution requires that the claim terminate[36] in the plaintiff's favor in *each* of the component suits of the Process.[37] The Wolfbergs assert that component A was not re-

29. *Probable cause* is a reasonable belief in the existence of the facts upon which the claim is based and a reasonable belief that under such facts the claim may be valid either at common law or under an existing statute. *Young, supra* note 16 at 710–12; *Lewis v. Crystal Gas Company,* Okl., 532 P.2d 431, 433 (1975); *Towne, supra* note 22, 166 P.2d at 100; *Gray v. Abboud,* 184 Okl. 331, 87 P.2d 144, 147 (1939). Where the facts which relate to the existence or non-existence of probable cause are admitted and support but a single inference, whether they constitute probable cause is a question of law for the court's determination. *Robberson v. Gibson,* 62 Okl. 306, 162 P. 1120, 1124 (1917).

30. In assessing whether the malicious-prosecution defendant had probable cause to bring the component actions, the trial court must inquire whether the advice of counsel was honestly sought and acted on in good faith by the malicious-prosecution defendant after a *full and fair disclosure of all known [as distinguished from discoverable] material facts.* If this inquiry establishes that counsel's advice was relied upon by the plaintiff in bringing the component actions, it is a *complete defense* to malicious prosecution. *Page v. Rose,* Okl., 546 P.2d 617, 621 (1976); *Lewis, supra* note 29 at 433–34; *Williams, supra* note 16, 78 P.2d at 1056–57; *El Reno Gas & Electric Co. v. Spurgeon,* 30 Okl. 88, 118 P. 397, 400 (1911). This result will not follow if the agency of the malicious-prosecution defendant's attorney was coupled with an interest. For a definition of a power coupled with an interest, see *Bowman v. Ledbetter,* 173 Okl. 345, 48 P.2d 334, 335 (1935). *See also* RESTATEMENT (SECOND) OF TORTS § 675, comment h (1977).

31. *Ripley v. Bank of Skidmore,* 355 Mo. 897, 198 S.W.2d 861, 866 (1947).

32. *Id.,* 198 S.W.2d at 866.

33. *Young, supra* note 16 at 710.

34. *See* RESTATEMENT (SECOND) OF TORTS § 679, comment c (1977). *See also Myhre v. Hessey,* 242 Wis. 638, 9 N.W.2d 106, 111 (1943).

35. *See* RESTATEMENT (SECOND) OF TORTS § 679, comment c (1977). *See also Page, supra* note 22 at 622.

36. A proceeding is *not* terminated until all appeals concerning the cause are concluded. *See* RESTATEMENT (SECOND) OF TORTS § 659, comment f and § 674, comment j; *see also Harper v. Cox,* 113 Kan. 357, 214 P. 775 (1923)

37. Resolution of the proceeding in favor of the person initiating it is conclusive proof that the

solved in Greenberg's favor. The material submitted, supplemented by the admissions in the parties' briefs in this court,[38] demonstrates that Wolfberg asserted *separate* claims in component A—one for an accounting and dissolution of the partnership interests shared with Greenberg and a second claim for alleged breach of fiduciary duties owed by Greenberg to Green Wolf Oil Company. Where more than one claim is asserted in a proceeding, it is proper for the court to review each claim *separately* to determine if it satisfies the delict's critical elements. If a claim is terminated in favor of the malicious-prosecution plaintiff, an action for malicious prosecution will lie on that singular claim, regardless of who prevails on other claims pressed in the same suit.[39]

For there to be a prevailing party in an action requires that the underlying proceeding *not* have been dismissed *without* prejudice. *Dismissal without prejudice* is *not* a termination favorable to the malicious-prosecution plaintiff. To hold differently would be to countenance the possibility of countervailing results arising from the same action.[40]

**F**

**The Statute of Limitation Trigger**

The limitation period for malicious prosecution [41] is triggered by *accrual of the cause of action*.[42] To determine when a cause accrues the court must ascertain (1) the nature of the right the litigant seeks to assert and (2) when the plaintiff could have *first* maintained the cause advanced to a successful result.[43] Generally, the one-year time bar is set in motion by each *qualified* componential predicate terminated in favor of the malicious-prosecution plaintiff.[44] This is the temporal point that triggers the limitation clock.

---

action was brought *with* probable cause. *Glasgow, supra* note 16 at 838. *See also* RESTATEMENT (SECOND) OF TORTS § 675, comment b.

**38.** Admissions made in the briefs may be considered as supplementing and curing an otherwise deficient appellate record. *Reeves, supra* note 22 at 753; *Womack v. City of Oklahoma City*, Okl., 726 P.2d 1178, 1181 (1986); *Timmons v. Royal Globe Ins. Co.*, Okl., 713 P.2d 589, 592 n. 10 (1985).

**39.** *Reeves v. Agee*, Okl., 769 P.2d 745, 752–54 (1989).

**40.** The second and third components of the Process identified by the certifying court were dismissed *without prejudice*. *An action dismissed without prejudice may not serve as a componential predicate for a malicious-prosecution action.* Malicious prosecution requires that the predicate action be terminated in the malicious-prosecution plaintiff's favor. *Glasgow, supra* note 16 at 839. *See also Heck v. Humphrey*, — U.S. —, —, 114 S.Ct. 2364, 2371, 129 L.Ed.2d 383 (1994).

**41.** The pertinent terms of 12 O.S.1991 § 95 are:

"Civil actions other than for the recovery of real property can only be brought within the following periods, *after the cause of action shall have accrued*, and not afterwards: * * *

Fourth. Within one (1) year: An action for libel, slander, assault, battery, *malicious prosecution*, or false imprisonment;...." [Emphasis added.]

**42.** In *Retherford v. Halliburton Company*, Okl., 572 P.2d 966 (1978), we defined *cause of action* as follows:

"A cause of action ... exists to satisfy the needs of plaintiffs for a means of redress, of defendants for a conceptual context within which to defend an accusation, and of the courts for a framework within which to administer justice.

\* \* \* \* \* \*

"[T]his jurisdiction is committed to the wrongful act or transactional definition of a 'cause of action.' Thus, no matter how many 'rights' of a potential plaintiff are violated in the course of a single wrong or occurrence, damages flowing therefrom must be sought in one suit or stand barred by the prior adjudication." *Id.* at 968–69.

**43.** *Samuel Roberts Noble Foundation, Inc. v. Vick*, Okl., 840 P.2d 619, 624 (1992); *Neff, supra* note 3 at 87.

**44.** *Noble Foundation, supra* note 43 at 624; *Reeves, supra* note 22 at 757; *Neff, supra* note 3, 41 P.2d at 87. An action's dismissal *without prejudice* is not recognized as a successful termination for the malicious-prosecution plaintiff. *See Glasgow, supra* note 16 at 839.

## VI

### ABUSE OF PROCESS [45]

#### A

#### Elements of the Tort

The quintessence of *abuse of process* is "not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends." [46] The tort's elements are (1) the improper use of the court's process [47] (2) *primarily* for an ulterior or improper purpose (3) with resulting damage to the plaintiff asserting the misuse. [48] Although a plaintiff in a predicate action may have been motivated by bad intention, there is no abuse if the court's process is used legitimately to its *authorized* conclusion. [49] The party who asserts the abuse-of-process claim is *not required* to prove (1) the underlying action was brought *without probable cause* or (2) that he/she prevailed in that proceeding. Neither is it necessary that the action, in which the abuse is alleged to have occurred, be concluded. [50]

These principles impel the conclusion that it is not the "commencement or the termination" of a proceeding which triggers the limitations period for this tort. Rather, it is the *accrual* of the cause of action. [51] An abuse-of-process claim accrues when the process is abused and damages are incurred, *regardless of when the action is determined.* Because this delict concerns itself with specific misapplications or misuses of process, the statute of limitation must be applied *separately* to each component of the Process. The court may find earlier components of the Process [as defined by the certifying court] relevant as proof of an ulterior or improper motive in a subsequent action. Nonetheless, unless a court's *process* has been *misused or misapplied* in the *specific* proceeding relied upon to assert the abuse-of-process claim, the delict is not maintainable.

#### B

#### The Limitation Period for Abuse of Process

Because the tort of abuse of process is not included *eo nomine* among the delicts enumerated in 12 O.S.1991 § 95(4) [52] —those which are governed by a one-year time bar—*it falls within the unenumerated class* for which a two-year limitation period is

**45.** *See* PROSSER AND KEETON, *supra* note 12, § 121 at 897 where abuse of process is distinguished from malicious prosecution in the following manner:

"Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing, or misapplying process justified in itself for an end other than that which it was designed to accomplish."

*See also Donohoe Const. v. Mount Vernon Associates*, 235 Va. 531, 369 S.E.2d 857, 862 (1988), which accords with this view.

**46.** *Heck, supra* note 40 at — U.S. at —, 114 S.Ct. at 2372.

**47.** The word *"process"*, as used in the tort of "abuse of process", encompasses the entire range of procedures incident to the litigation process. *See Nienstedt v. Wetzel*, 133 Ariz. 348, 651 P.2d 876, 880 (1982).

**48.** *Neil v. Pennsylvania Life Insurance Company*, Okl., 474 P.2d 961, 965 (1970); *Houghton v. Foremost Financial Services Corp.*, 724 F.2d 112, 116 (10th Cir.1983). *See also* RESTATEMENT (SECOND) OF TORTS § 682 which states the general principle of the delict as:

"One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.

**49.** *Donohoe, supra* note 45, 369 S.E.2d at 862; *see also* RESTATEMENT (SECOND) OF TORTS § 682, comment b.

**50.** The abuse-of-process delict had its genesis in the case of Grainger v. Hill, 132 Eng.Rep. 769 (1828). *Grainger* is instructive in answering the third certified question. It holds that:

"[The Plaintiff's] complaint being that the process of the law has been abused, to effect an object not within the scope of the process, it is *immaterial whether the suit which that process commenced has been determined*, or not, or whether or not it was founded on reasonable and probable cause." *Id.* at 773. [Emphasis supplied.]

**51.** *See supra* Subpart V(F) for a complete discussion of the statute-of-limitation trigger for actions governed by 12 O.S.1991 § 95.

**52.** For the civil actions included in 12 O.S.1991 § 95(4) see *supra* note 41.

**906**

provided by 12 O.S.1991 § 95(3).[53] At the time § 95(4) was enacted the torts of malicious prosecution and abuse of process *both were known to the common law of Oklahoma as distinct delicts;* yet, abuse of process is not included among the actions governed by the one-year statutory time bar. Based upon the time-honored canon of construction known by the Latin phrase of *expressio unius est exclusio alterius,*[54] we conclude that the legislature *intended to exclude* abuse of process from the class of torts for which a one-year limitation was established.

## VII .

### CONCLUSION

 Application of the rules announced today requires that malicious prosecution be distinguished from abuse of process—the former lies for the malicious *initiation* of process and the latter for a *perversion* of the process *after* it is issued. If process is wrongfully initiated and later perverted, both torts would lie since they are not to be viewed as mutually exclusive delicts. The limitation periods for both torts are triggered by accrual of the respective causes of action. Because malicious prosecution is a tort disfavored by our jurisprudence and abuse of process is fact-specific, *i.e.,* tied to misuse of process in a particular action, the applicable limitation period must be gauged on a case-by-case basis. As pointed out earlier in this opinion, the question—whether the *earlier* components of the Process are relevant to show (a) in malicious-prosecution claims the elements of probable cause, malice and/or punitive damages or (b) in abuse-of-process claims improper or ulterior motives or appli-

cation—constitutes a matter within the certifying court's cognizance.[55]

CERTIFIED QUESTIONS ANSWERED.

HODGES, C.J., LAVENDER, V.C.J., and HARGRAVE, OPALA, ALMA WILSON, SUMMERS and WATT, JJ., concur;

SIMMS and KAUGER, JJ., concur in result.

---

**53.** The pertinent terms of 12 O.S.1991 § 95 are: "Civil actions other than for the recovery of real property can only be brought within the following periods, *after the cause of action shall have accrued,* and not afterwards: * * * Third. Within two (2) years: An action for ... injury to the rights of another, not arising on contract, and not hereinafter enumerated; ...." [Emphasis added.]

**54.** This maxim of statutory interpretation means that *the expression of one thing is the exclusion of another. Newblock v. Bowles,* 170 Okl. 487, 40 P.2d 1097, 1100 (1935). *See also Williams v. Lee*

*Way Motor Freight,* Okl., 688 P.2d 1294, 1301 n. 17 (1984) (Opala, J., dissenting). The canon is applicable only where in the natural association of ideas the contrast between a specific subject matter which is expressed and one which is not mentioned leads to an inference that the latter was not intended for inclusion in the statute. *Hardesty v. Andro Corp.—Webster Division,* Okl., 555 P.2d 1030, 1036 (1976); *Spiers v. Magnolia Petroleum Co.,* 206 Okl. 510, 244 P.2d 852, 856–57 (1952).

**55.** *See Shebester, supra* note 6 at 606.